## TOWN OF WOODVILLE *v.* C. H. JENKS.

[61 South. 172.]

1. MUNICIPAL CORPORATION. *Engineer. Contracts. Compensation.*

Where an engineer agreed with the town to supervise the construction of its waterworks system, for the compensation of five per cent. on the construction cost of the plant, and guaranteed that a certain character of pump would do the desired work, he is entitled to his

compensation where the failure of the pump to do the work was caused by the fault of the city, even though the town had removed such pump and installed another without his assistance.

2. SAME.

In such case the supervising engineer is not entitled to compensation for extra services, in the absence of a contract with or an order of the board of aldermen of the town providing for the same.

APPEAL from the chancery court of Wilkinson county. HON. G. G. LYELL, Chancellor.

Suit by C. H. Jenks against the town of Woodville. From a judgment for plaintiff, defendant appeals.

The decree of the trial court is as follows:

"(1) The court finds that the issues made by the parties hereto are based upon the deep well and pumping system attempting to be installed by O. J. Gorman & Co., contractors, with the town of Woodville, for the erection, construction, and completion of waterworks and electric lighting plants at and in said town, and the sum, if any, due C. H. Jenks.

"(2) That said town contends that said deep well pumping system was not adapted to its conditions, and that C. H. Jenks, complainant, was solely to blame for its not being. That he induced said town to adopt the particular Downie Pump Company's deep well pumping engine, and guaranteed that it would do the work cheaper and more effectively than any other system.

"(3) The court finds the fact on such contention against the said town of Woodville, except that Jenks verbally guaranteed at the meeting on March 11, 1904, that a double-acting deep well pump would do the required work, but guaranteed no special make of such pump, and especially finds the facts to be:

"(4) That C. H. Jenks, employed by the town of Woodville as its supervising and advising engineer, drew up, among other plans and specifications, that for the delivery of a double-acting pumping engine of the geared type, having the capacity of not less than ten thousand

gallons per hour, which specifications set out specifically the nature and character of its mechanical effectiveness, power, and purpose.

"(5) That O. J. Gorman & Co., one of the bidders who bid on the entire system, obtained the contract from the town of Woodville, based on the plans and specifications on file in the office of the board of mayor and aldermen of the said town, which, among others, included those for said double-acting pumping engine of the geared type having the capacity of not less than ten thousand gallons per hour.

"(6) That the said Gorman & Co., using the form of proposal furnished by said town, submitted the following as their bid, which was accepted by said town, to wit: To furnish all labor and material required by and in accordance with each section of the specifications and instructions to bidders, and build the plants complete for the net sum of thirty-four thousand and three hundred and five dollars. The court further finds that along with said bid they state: 'We inclose our check for one thousand and seven hundred dollars on the First National Bank of Farmersville, Texas, made payable to David C. Bramlette, Treasurer of the town of Woodville, confessed to be due the said town, should we, said Gorman and Company, fail or refuse to enter into a contract and furnish a satisfactory bond equal to fifty per cent. of the full amount of the contract within ten days from the date of acceptance of proposal by the town of Woodville.'

"(7) That contract was entered into and bond given, or must be treated as given. That, if not given, said sum of one thousand and seven hundred dollars represented in said check was in the hands of said town as a forfeiture for not so doing. That, if it were not taken, it was the fault of the town, and not of complainant.

"(8) That, under the terms of the contract with Gorman & Co., every interest of the said town was guarded and protected. That Gorman & Co. undertook, and by

the specifications made part of their contract were bound, to have made complete and to have turned over to said town a deep well pumping system, doing all the work required under specifications. That failure to do so was enforceable under their contract with said town, and that said town had, within its own control, the means to force said contractors to do so. That their bond was given in part for such purpose. That there was a special ten per centum reserve out of each payment to enforce such, and such ten per centum, under reports made by complainant, was regularly reserved until it reached before final settlement much more than the value of the Downie pumping engine. That, at final settlement with said Gorman & Co., the said town actually had in its hands between six thousand and five hundred and seven thousand belonging to Gorman & Co., out of which to protect itself. That it, in its own wrong, paid over said sum to Gorman & Co., or paid it under their direction, and that the said town voluntarily and without the consent or advice of complainant paid Gorman & Co. for said Downie deep well pumping engine in full, and did not require them, under their bond, or otherwise, to refund the money so paid, when the whole was in its personal control.

"(9) The court further finds from the evidence: That a deep well pumping system is effective as a means of delivering water under the requirements of the contract with said town of Woodville. That it is the most economical as well as the best available instrumentality in such works to bring the water to the surface, force it into the water tower or tank, and drive it through the mains and connections with the mains by direct pressure. That the reason why said Downie pumping engine did not do the work was due to the fault of the contractors, Gorman & Co., or to the town, if requested by Gorman & Co., in not washing out or cleansing the deep well, nine hundred and twenty feet deep, of about sixty feet of sand, which had accumulated in the bottom of same from nonuse for

about one year. That with the water in the well, freed from the sand so accumulated in it, the said Downie engine would have done the work required under the contract. That it was not the fault of complainant that Gorman & Co. failed to clean out the said well. That he constantly insisted that the contractors were the ones to make it do the work, or to become subject to the penalties provided in the contract. That he proposed to himself to take the matter in hand and make the pump do the work required, if he should be paid for his time, and to charge nothing for his labor if he did not. That he was under no obligations so to do by virtue of his contract with the town. That he verbally guaranteed that it could be made to work and would work, which guaranty was not in writing, but that, if it had been, the said town did not accept his proposal, and ought not to have so done, inasmuch as it had a contract with the contractors forcing them to give a perfectly working deep well pumping system, doing all required by the specifications and contract.

"(10) The court further finds from the evidence that, if the pipe attached to the pumping engine did not lower the working barrels to a sufficient depth in the well, this was but a matter of adding a few more feet of pipe by the contractor through the agency of the makers of the engine or by the town.

"(11) The court further finds from the evidence: That the said C. H. Jenks, complainant, did and performed all of his duties to the defendant, the town of Woodville, undertaken by him, and that he is in no fault, but the said town was in its own fault and wrong in its settlement with said Gorman & Co. in not enforcing the penalties of the contract, and in paying said Gorman & Co. for said Downie deep well pumping engine. That the evidence shows that the said defendant admits that complainant met every requirement of him, and that the only cause of complaint it urged or could urge against him was that he induced the said town to adopt the Downie

system of deep well pumping, and guaranteed it to do all the work required, and to be best adapted to the plant of said town. That the air compressor system installed and bought by it was done without the advice of complainant, and that the waterworks, at the hearing hereof, were giving excellent service with said air compressor, and the water was excellent, and then freed from sand.

"(12) That the evidence shows without contradiction of any kind that the amount claimed as due him, complainant, by said defendant, the town of Woodville, was on the 6th day of September, 1905, due to and should have been paid to the said complainant the sum of one thousand and three hundred and eighty-seven dollars and twenty-three cents and that said sum is now due him, with interest thereon, at the rate of six per cent. per annum from the said 6th day of September, 1905. It is thereupon ordered, adjudged, and decreed by the court that the said town of Woodville do pay unto the said C. H. Jenks, complainant, and that said Jenks do have and recover of and from said town the sum of one thousand and eight hundred and ninety-four dollars and fifty-three cents being the amount, principal, and interest, now due him, together with interest at six per cent. per annum from this date until paid, and that all costs herein be taxed according to law against the said town of Woodville.

"It is further ordered, adjudged, and decreed that in default of so paying said money, with interest and costs, as aforesaid, within ten days from this date, that execution issue according to law against said town of Woodville for said sum, with interest and costs aforesaid.

"Ordered, adjudged, and decreed in vacation this 26th day of October, A. D. 1911, with order to the clerk of the chancery court of Wilkinson county, state of Mississippi, to enter same on the minutes of the chancery court of said county, as though done in term time.

"The defendant having prayed an appeal with supersedeas, the same is allowed, and sixty days allowed in which to present and file a bill of exceptions."

*W. F. Tucker,* for appellant.

The main issue in this case is whether or not appellee guaranteed the deep well pump, and whether or not he carried out and performed his guarantee. The question of his guarantee is raised by the bill. The appellant was forced to rely upon an engineer, being entirely ignorant of installing a water and light plant, employed appellee, a competent enginer, to draw plans and superintend the work, and relied upon him absolutely. A well of water, the indespensable ground of the whole system, is obtained and tested and found to meet all requirements.

The test is made with an air compressor which raises the water and is entirely satisfactory, and appellant satisfied with a machine that does the work, ignorant of all other makes, wants that machine. But now comes in appellee, the skilled and trusted employee, and recommends a deep well pump and persuades appellant to reject an air compressor which has directly recommended and sold itself to appellant by satisfactory performances, and persuades, by his guarantee, the appellant to purchase a machine through him; and appellant relying upon his skill as an enginer and not thinking of profit to be made as a salesman, rejects what is known to be good, for an alleged better machine, and purchases a deep well pump.

That appellee guaranteed the deep well pump, we think, can hardly be questioned.

The contention of counsel in the court below was that the guarantee, not having been reduced to writing, was not valid and imposed no legal obligation upon appellee. As a general rule in actions at law this may be correct; but appellee, although he had complete remedy at law, invokes the aid of a court of equity, and by the broad principles of equity he must be governed and tried. Did he perform his duty as a trusted employee in a position of educated skill, and for that very skill employed because of his employer's absolute ignorance; and has he done

equity and has he come into this court with clean hands? The record says no. It was his duty when the deep well pump was a failure to take it off of appellant's hands and to pay it the money it was out. Appellee in his letter, after appellant had discharged the deep well pump and installed the "air compressor," offered then to make a test, but says nothing about his guarantee. And it will be noted in this letter that he does not say positively that the deep well pump will do appellant's work. There are depositions in evidence, for appellee of witnesses connected with the deep well pump factory, which pretend to show that such a pump was a success, or might be a success, but that should avail nothing against the established facts of this case that such a pump would not and did not perform services required, but was a failure in this particular well.

This being the case, appellee wronged appellant by inducing the purchase of the deep well pump and failing to perform his guarantee, and appellant is entitled to damages sustained to at least the purchase money of the deep well pump, the sum of seventeen hundred dollars, which it asks for in its cross-bill, which would more than balance the amount claimed by appellee on his contract, or any amount claimed by him; and the court below in rendering decree for complainant, must have so decreed because appellee's guarantee was not in writing. But we insist that under the peculiar facts of this case, the guarantee is in equity as binding as though it was in writing. And appellant could not hold Gorman & Co., contractors, for the worthlessness of the deep well pump, for appellant has discarded it when proved valueless and submitted an air compressor in its stead. This is a feeble effort to shift the responsibility from his own shoulders, where it belongs, to another.

And we submit that the decree of the court below is erroneous *in toto*.

However, if mistaken in this view, we insist that there is no reason in law or equity in allowing appellee expense

and extra account of three hundred and sixty-two dollars. There was no contract to pay for such expense and services and appellee so testified in his answer to the first cross-interrogatory and the only contract made with appellee by the appellant is set out in exhibit one to appellant's answer to bill of complaint. And a municipal corporation, appellant is one, can only bind itself to pay out money by contract authorized by order on its minutes; none such were shown or could have been shown. It cannot be seen from this account but what the expenses were incident to appellee's services rendered under his contract, which appellant was not to pay for; and if in the pretended effort to make the deep well pump work, that was only doing his duty under his guarantee, and no charge to appellant. It was appellee's duty to perform these services under his guarantee.

We insist that the decree of the court below should be reversed, and judgment rendered in favor of appellant.

*Powell & Thompson,* for appellant.

Although it is shown by the evidence and so found by the chancellor that the appellee did guarantee the deep well pump, and although it is shown that the deep well pump did not come up to the guaranty of appellee, yet it is contended by him that the guaranty is not binding because it was not in writing and is therefore abnoxious to the statute of frauds. It occurs to us that this is a novel proposition for while the statute of frauds does say that "no one shall be held for the debt, default or miscarriage of another unless such guaranty be in writing."

This has no application to the present case. In the instant case we are not attempting to hold the guarantor for any debt, default or miscarriage of another person but upon his own obligation in a matter in which he and he alone is responsible. If I should sell a horse and guarantee that it was sound, my verbal guaranty surely would be sufficient, or if somebody else should sell a horse

and for a consideration I should guarantee the horse was sound, surely this would be enough if done verbally. Our learned friends on the other side make a mistake in supposing that we are trying to hold him responsible on the debt, default or miscarriage of another person when in fact we are attempting to hold him for failure in performance of a thing not a person, and in a matter in which he is not secondarily but primarily bound. The learned chancellor seems to have gone off on the idea that a written guaranty was necessary and was clearly wrong in this particular. It is true that the chancellor in his finding says that no particular kind of deep well pump was agreed upon but we meet this suggestion by showing that the appellee guaranteed that a deep well pump would do the work and the whole matter of selecting the particular kind of deep well pump was left to him, and so his guaranty extended to the deep well pump which he did actually select. It is shown by the evidence that this deep well pump cost seventeen hundred dollars and was a complete loss to the city and we fail to see why appellee should not respond to the city on his guaranty for the amount.

As to the three hundred and sixty odd dollars for which appellee got judgment and which he claimed were expenses as shown by his itemized bill, we are utterly unable to conceive how the chancellor could have allowed this. There was nothing said in the contract about paying his expenses and there was no ratification by the board. The board of mayor and aldermen could only contract to pay money while in session as a board and it does not appear from the evidence that they ever had any contract to pay this amount or any other amount for expenses.

Wherefore we say that the decree of the learned chancellor should be reversed and a new trial awarded appellant.

*J. McC. Martin,* for appellee.

The record herein raises hardly any question, other than one of fact. Hence no extended citation of authorities becomes necessary. The first question, and the one upon which rests the burden of appellant's contention, is that of guaranty. The second grows out of the contention that no bond was exacted from or given by Gorman & Co. The third grows out of the finding of the facts by the court.

Question of Guaranty: "An action shall not be brought to charge a defendant or other party. (a) Upon any special promise to answer for the debt or default or miscarriage of another person; unless the promise or agreement upon which such action may be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some person by him, thereunto lawfully authorized." Miss. Code 1906, section 4775.

"Every agreement which is required to be in writing by the statute of frauds must be certain in itself, or capable of being made so by reference to something else, whereby the terms can be ascertained with reasonable precision; otherwise it cannot be carried into effect." *McGuire* v. *Stevens,* 42 Miss. 730.

"If the responsibility of A. is contingent upon the act of B., the case is within the statute." *Olive* v. *Lewis,* 45 Miss. 209.

"An oral promise to indemnify a person for becoming surety on another's bail bond is within the statute of frauds." *May* v. *Williams,* 61 Miss. 132.

"Contracts of guaranty and suretyship fall within the statute of frauds as undertaking to answer for the debt, default or miscarriage of another," and must be evidenced by writing in accordance with the provisions of the statute." 20 Ency. of Law & Pro., p. 1413.

Gorman & Company were under contract to construct the waterworks, etc. It was they that offered the Downie

pumping engine, as meeting requirements of section 8 of the specifications. Hence, they were bound, and not appellee, unless he' guaranteed the Downie pumping engine in writing. This was not done and the court so found as a special fact. See final decree in record.

Did appellee by any implied contract, such as would take out of the statute of frauds, guarantee the said Downie Pumping Engine? The specifications, in section eight of same, is really a full answer to this question. But, to apply the law as to implied contracts: ''Implied contracts are of two kinds which are radically different in their nature. They are, first, contracts implied in fact, and second, contracts implied in law, or *quasi* contracts.'' Both express contracts and contracts implied in fact are found upon the actual agreement of the parties. 15 Am-& Eng. Ency. of Law 1077-8.

Implied contracts arise chiefly from work and service, money had and received and money paid, goods sold and delivered, use and occupation. Hence, no implied contract can possibly result from the facts in this case.

Working Contracts: ''A working contract is one under which work or labor is to be performed in the erection, construction or repair of some building, edifice, structure or other work.''

30 Am. & Eng. Ency. of Law, 1194.

The whole system under which such contracts are created, etc. is found in Am. & Eng. Ency. of Law, Vol. 30, p. 1195-1196-1197-1198-1200-1201. See also pages 1218 and 1219.

Contractor's Bond: The contract, proposal and specifications placed upon the contractors the necessity of giving a bond in fifty per cent. of their bid. That they did this must from the facts proven be presumed. 22 Am. & Eng. Ency. of Law, 1233, 1234 and 1235.

Could Gorman & Company claim releases from performance of his contract, because he, Babbitt & Snyder, considered deep well pumping impracticable at Woodville?

"A contract is not invalid, nor is the promissor discharged merely because it turns out to be difficult, unreasonable, dangerous or burdensome." *Jones* v. *Anderson,* 2 So. 911; *Morrow* v. *Campbell,* 31 Am. Dec. 794; *Cassady* v. *Clark,* 7 Ark. 123; *Williams* v. *Miller,* 6 Pac. 14; *Walker* v. *Tucker,* 70 Ill. 527.

"A failure to perform a contract to dig a well will not be excused by accident making it difficult or dangerous." *James* v. *Scott,* 98 Am. Dec. 328.

"Where the performance becomes impossible subsequent to the making of the contract, the general rule is that the promissor is not therefore discharged. . . . Where the law creates a duty or charge, and the party is disabled to perform it without any default in him, there the law will excuse him; but, where the party by his own contract creates a duty or charge upon himself, he is bound to make it good, notwithstanding any accident by inevitable necessity, because he might have provided against it by his contract." 9 Cyc. of Law & Pro., pp. 627-628.

The foregoing principles, are cited only as showing the effect of Gorman & Co.'s undertaking. They are cited, aside from the facts, that so clearly show their reckless and conscienceless failure to perform their part of the contract embraced in section eight of the specifications; and aside from the facts which point to the impositions practiced by them on the town of Woodville, in securing the substitution of another and different system of water delivery from that named in the contract, whereby they entailed upon the town of Woodville an additional and unnecessary burden. And, they are cited, aside from the extraordinary conduct of appellant manifested in the acceptance of Gorman & Co.'s suggestions, whereby they released them from performance of their contract, from the obligations of their bond and from a refunding of the money which had been paid to them on account of the Downie deep well pumping engine, making to them there-

by a present of one thousand five-hundred and thirty dollars, when there was still in the hands of appellant nearly seven thousand dollars due to Gorman & Co. Add to this the still more remarkable fact that Gorman & Co. took said one thousand five hundred and thirty dollars without paying to the Downie Company a single dollar for the pumping engine so discarded.

The undertaking of Jenks was governed by his contract, a contract which necessarily placed him in a position antagonistic to Gorman & Co., unless they did what they agreed to do.

Argued orally by J. McC. Martin, for appellee.

REED, J., delivered the opinion of the court.

Appellee brought suit against the appellant to recover a balance due him as supervising and advising engineer in the construction of waterworks and electric lighting plants. Appellee claimed a balance due of one thousand and twenty-five dollars for services as engineer under a contract with the appellant, evidenced by an order duly adopted and entered upon the minutes of the board of mayor and aldermen of the appellant, whereby he was to be paid five per cent. on the total cost of the plants, which total cost is shown to be the sum of forty thousand and five hundred dollars. Appellee also claimed an amount due him for extra services and certain personal expenses of three hundred and sixty-two dollars and twenty cents.

The chancellor in rendering his final decree in the case also made a careful and complete report of all his findings. In this he fully reviews the case, showing in detail his conclusions on the different questions presented, and showing that he gave a painstaking as well as able attention to the trial and disposition thereof. He rendered judgment in favor of appellee for the full amount claimed, with interest at the legal rate from the 6th day of September, 1905. We believe that he is correct in deciding

that appellee is entitled to judgment for the balance due
him for his services on the contract price of five per cent.
on the total cost of the plants. The record shows that one
thousand dollars had been paid appellee, and that the bal-
ance therefore remaining was one thousand and twenty-
five dollars. But we do not believe that appellee is en-
titled to judgment for his account for extra services and
expenses.

We fail to find that the appellant, through any action of
its board of mayor and aldermen, contracted with ap-
pellee for the extra services or for expenses. There is no
order of the board relative to this. In fact, it is shown
that the only contract between the parties is that evi-
denced by the order, in which appellee was to receive for
his services the amount of five per cent. on the total cost
of the plants. From all before us it appears that these
services by appellee were only voluntary and incidental
to the contract.

A careful review of the case leads us to conclude that
appellee should only recover the amount due him under
his contract with the appellant and that the appellant is
not liable to him for the extra services and the expenses
as claimed in his itemized statement of account filed,
amounting to the sum of three hundred and sixty-two
dollars and twenty cents. Therefore the final decree of
the chancery court in this case is reversed in so far as it
gives judgment against the appellant in favor of appellee
for the sum of three hundred and sixty-two dollars and
twenty cents, the account for extra services and for ex-
penses, and is affirmed in rendering judgment for the sum
of one thousand and twenty-five dollars, the balance
due appellee under his contract with the appellant.

Judgment will be entered here against the appellant
and in favor of appellee for the sum of $1,025.

*Affirmed in part.*
*Reversed in part.*